UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HOOMAN DAVOODI,<br><br>    Plaintiff,<br><br>vs.<br><br>BEHZAD IMANI; HOOZAD INC.,<br><br>    Defendants. | Case No: C 11-0260 SBA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Docket 4 |

The instant action arises from a business dispute, between Plaintiff Hooman Davoodi ("Plaintiff") and Defendants Behzad Imani ("Imani") and Hoozad, Inc. ("Hoozad"). The Court has original jurisdiction over Plaintiff's federal claims, 28 U.S.C. §§ 1331, and supplemental jurisdiction over his state law causes of action, 28 U.S.C. § 1367(a). The parties are presently before the Court on Plaintiff's Ex Parte Motion for Temporary Restraining Order and Order to Show Cause. Dkt. 4.[1] Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

---

[1] Though styled as "Ex Parte," actual notice of the instant motion was provided to Defendants.

I. **BACKGROUND**

   A. **FACTUAL SUMMARY**

In the Spring of 2009, Imani approached Plaintiff, a long-time acquaintance, regarding the formation of a "green technology" company which they planned to name Hoozad, Inc. Davoodi Decl. ¶ 4. The name "Hoozad" is based on a combination of their first names, (i.e. Hooman and Behzad). Id. The purpose of Hoozad was to manage and initially fund two for-profit subsidiaries, Amberix and Transpotic. Id. ¶ 4. Their agreement was that Imani would create Hoozad as the parent entity, and that Plaintiff would enter as a 50% equity shareholder, owning Series A Preferred Stock, in exchange for a $500,000 investment. Id. ¶ 5. In addition, Plaintiff was to receive one of three seats on Hoozad's board of directors, and share in the responsibility for the direction of Hoozad, Amberix and Transpotic. Id. Imani prepared a term sheet which set forth the principal terms of their agreement. Id. ¶ 6 & Ex. 1.

In July 2009, attorneys at the law firm of Nixon Peabody LLP ("Nixon Peabody") representing Hoozad drafted the necessary documents to facilitate Plaintiff's investment. Id. ¶ 7. In August 2009, Plaintiff was presented with a Stock Purchase Agreement ("SPA"), which, per the term sheet, specified that Plaintiff was to invest $500,000, which would be paid in three installments within six months. Id. ¶¶ 7-8. In return, Plaintiff was to receive Series A Preferred Stock, representing a 50% ownership in Hoozad. Id. ¶ 7. Subsequently, Imani stipulated to Plaintiff's request to revise the SPA so that he could tender his $500,000 investment over the course of four installments over the course of eleven months. Id. ¶ 8. In accordance with this agreed-upon modification, Nixon Peabody revised the payment schedule and circulated a revised Series A Preferred SPA ("Revised SPA") and related documents. Id. ¶ 9 & Ex. 2. By mid-August 2009, Plaintiff paid his first installment of $50,000. Id. ¶ 10.

After the Revised SPA was sent to Imani, he repeated to Plaintiff that he was amenable to the revised payment schedule and said that he would sign the necessary documents and issue Plaintiff his stock shares accordingly. Id. ¶ 10. On August 24, 2009,

an attorney at Nixon Peabody sent Imani an email asking for a "status update" on his execution of the financing documents.  Id. Ex. 3.  On August 26, 2009, Imani responded by email, stating that he was "super busy" that week, and proposed signing the Revised SPA and related documents the following Tuesday.  Id. ¶ 11 & Ex. 3.  Imani did not follow through on signing the stock purchase documents, however.  Id. ¶ 11.  Nonetheless, Plaintiff, allegedly trusting Imani and believing that he simply was busy, executed the Revised SPA and other documents, and continued paying the installments in accordance with their agreement.  Id. ¶¶ 12-13.  As of November 2010, Plaintiff alleges that he had sent Defendants installment payments totaling $251,706.90.  Id. ¶ 14 & Ex. 4.  After Plaintiff requested the issuance of his shares, however, Imani became hostile and refused to accept further payments from Plaintiff.  Id. ¶ 16.  In addition, Imani refused to issue any stock to Plaintiff and refused to sign any of the revised stock purchase documents.  Id. ¶ 16.  Then, in early December 2010, Imani threatened to sell Plaintiff's equity position in Hoozad to third party investors by January 30, 2010.  Id. ¶ 20.

### B. PROCEDURAL HISTORY

On January 19, 2011, Plaintiff filed a Verified Complaint in this Court against Imani and Hoozad, alleging claims for:  breach of oral and implied contract; fraud; negligent misrepresentation; securities fraud under Rule 10b-5; securities fraud in violation of 15 U.S.C. § 77q; accounting; specific performance; and preliminary and permanent injunction.  Dkt. 1.  In addition to the Complaint, Plaintiff filed a motion for temporary restraining order ("TRO") in which he seeks to enjoin Defendants from:  "(1) from selling or in any way transferring to third parties shares of Hoozad, Inc., owned by Hooman Davoodi; (2) from selling or in any way transferring to third parties any rights to purchase stock in Hoozad, Inc. that Davoodi has by entering into a stock purchase agreement with Imani; and (3) [an order] that all accounts, books and records of Hoozad, Inc. be immediately disclosed to plaintiff."  Dkt. 4.  Plaintiff provided actual notice of the action and the TRO request to Defendants, who have filed an opposition and a supporting declaration from Imani.  Dkt. 12.  In turn, Plaintiff filed a brief reply memorandum.

## II.     LEGAL STANDARD

The standard for a TRO is the same as for a preliminary injunction. See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001); Lockheed Missile & Space Co. v. Hughes Aircraft, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., ---U.S. ---, 129 S.Ct. 365, 376 (2008). This is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id.

Prior to Winter, the Ninth Circuit applied a sliding scale approach whereby an injunction could be granted upon a "possibility" of irreparable harm if there nonetheless were "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1052-53 (9th Cir. 2010) (quoting Lands Council v. McNair, 537 F.3d 981, 986 (9th Cir. 2008) (en banc)). In Winter, the Supreme Court rejected that approach, and held that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." 129 S.Ct. at 375-76.

After Winter, the Ninth Circuit followed the four-part Winter test without regard to the sliding scale approach. See Am. Trucking Assns., Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) ("To the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable."); Stormans Inc. v. Selecky, 571 F.3d 960, 977 (9th Cir. 2009) (interpreting Winter as holding that the sliding scale test was "too lenient"); Cal. Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849-50 (9th Cir. 2009) (applying Winter factors with no mention of the former sliding scale test). More recently,

- 4 -

1 however, the Ninth Circuit has clarified "that the 'serious questions' approach survives
2 Winter when applied as part of the four-element Winter test." Alliance for Wild Rockies,
3 622 F.3d at 1053. "Therefore, 'serious questions going to the merits' and a hardship
4 balance that tips sharply towards the plaintiff can support issuance of an injunction, so long
5 as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the
6 public interest." Id.

### III. DISCUSSION

#### A. SUCCESS ON THE MERITS

Under California law, a contract may be express or implied. Cal. Civ. Code § 1619. An express contract is "stated in words," and may be written or oral. Id. §§ 1622, 1623. "An implied contract is one, the existence and terms of which are manifested by conduct." Id. § 1621. To state a claim for breach of contract under California law, Plaintiff must plead facts establishing the following elements: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal.App.4th 1226, 1239 (2008). The elements are the same regardless of whether the allegedly breached contract is written or oral. Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal.App.3d 1371, 1388 (1990). Likewise, "[a] cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." Yari v. Producers Guild of Am., Inc., 161 Cal.App.4th 172, 182 (2008).

Defendants argue that Imani never agreed to the terms of the Revised SPA. Imani Decl. ¶ 6. Yet, they do not dispute that on August 26, 2009, Imani acknowledged in writing that he was planning on signing the Revised SPA and related documents during the following week. Davoodi Decl. Ex. 3. In addition, Defendants accepted substantial payments from Plaintiff consistent with the terms of their agreement. Id. ¶ 14. Though Defendants deny having received such payments, they do not dispute that over $215,000 in

checks were made payable and ostensibly were negotiated by Hoozad.[2]  Nor is the Court persuaded by Defendants' contention that Plaintiff's contract claim is infirm because Imani did not actually sign the Revised SPA.  As discussed, Plaintiff's contract claim is based on the breach of an oral and implied contract.  Compl. ¶¶ 21-25.  An oral contract claim is based on oral representations, while an implied contract claim is predicated on the promisor's conduct.  Thus, by definition, such claims do not rest upon whether the parties' agreement was executed.

Next, Defendants argue that Plaintiff is not likely to succeed on his contract claim on the ground that Plaintiff breached the Revised SPA by failing to timely make the requisite installments.  Defs.' Opp'n at 5.  This contention lacks support.  Although Defendants cite generally to the Revised SPA, they fail to identify what particular provision in the agreement establishes that Plaintiff's payments were untimely.  The Court does not consider matters that are not specifically identified in the record.  See Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) ("As the Seventh Circuit observed in its now familiar maxim, 'judges are not like pigs, hunting for truffles buried in briefs.'") (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).  But even if Plaintiff were late in his payments, Defendants do not deny receiving substantial payments from Plaintiff.  Thus, based on the record presented, the Court is persuaded that, at a minimum, there are serious questions going to merits of Plaintiff's contract claim.

### B. IRREPARABLE HARM

The party seeking preliminary injunctive relief is required to "establish that he is likely to suffer irreparable harm in the absence of preliminary relief." Winter, 129 S.Ct. at

---

[2] Defendants assert that Plaintiff's payments were made to his own attorneys, and not to Imani or Hoozad.  Defs.' Opp'n at 5.  The copies of the cancelled checks proffered by Plaintiff show that a few checks were made payable to Pat Maxton, Farzam Roknaldin and Nixon Peabody.  Nixon Peabody was the firm representing Hoozad in connection with the SPA and Revised SPA.  Davoodi Decl. ¶ 7.  The role of the other two individuals in the underlying events, if any, is not disclosed.  However, the Court notes that checks totaling $215,000 were made payable to and appear to be endorsed by Hoozad.  See Davoodi Decl. Ex. 4.  Thus, Defendants' contention that Plaintiff made no payments to Hoozad appears to be specious.

374. Irreparable injury does not exist where monetary damages would be an adequate remedy. See Cal. Pharmacists Ass'n, 563 F.3d at 851 ("monetary harm does not constitute irreparable harm."). Thus, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Lydo Enter., Inc. v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984).

Here, Plaintiff claims that absent the proposed injunction, he will lose the opportunity to play a "long-term management role" in Hoozad, and that such loss cannot be compensated monetarily. Pl.'s Mot. at 8-9. For their part, Defendants assert that Plaintiff has failed to demonstrate irreparable harm—but neglect to offer any supporting argument or evidence. Defs.' Opp'n at 6. In addition, neither side provides any *relevant* authority to support their respective positions. Nonetheless, the Court notes that there is authority for the proposition that the potential loss of an opportunity to participate in the management of a corporation can give rise to irreparable harm. See Wisdom Import Sales Co. v. Labatt Brewing Co., 339 F.3d 101, 114-15 (2d Cir. 2003) ("a bargained-for minority right to participate in corporate management has value in and of itself and a denial of that right, without more, can give rise to irreparable harm."); Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd., 441 F. Supp. 2d 552, 563 (S.D.N.Y. 2006) ("[c]onduct that unnecessarily frustrates efforts to obtain or preserve the right to participate in the management of a company may constitute irreparable harm") (internal quotes and citations omitted). Given the record and arguments presented, the Court is persuaded that Plaintiff has made a sufficient showing of irreparable harm for purposes of obtaining a TRO.[3]

---

[3] The Court notes that in his reply, Plaintiff makes new assertions of irreparable harm that were not raised in Plaintiff's moving papers. As such, the Court will not consider Plaintiff's assertions at this juncture. Indep. Towers of Wash., 350 F.3d at 930 (courts "review only issues which are argued specifically and distinctly in a party's opening brief."). In addition, Plaintiff's assertions are unsupported. See Barcamerica Int'l USA Trust v. Tyfield Importers, Inc., 289 F.3d 589, 593 n.4 (9th Cir. 2002) (arguments of counsel are not evidence).

### C. BALANCE OF EQUITIES

In order to qualify for injunctive relief, a plaintiff must establish that the balance of equities tips in his favor. Winter, 129 S.Ct. at 374. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Id. at 376. Here, Plaintiff contends that a TRO is necessary in order to prevent him from losing the opportunity to be an owner and manager of Hoozad. Pl.'s Mot. at 9. Defendants do not address this factor, nor do they claim that they will suffer any harm should the Court issue a TRO. Therefore, the Court finds that, on balance, the equities favor Plaintiff.

### D. PUBLIC INTEREST

Plaintiff contends that the public interest will be served by the proposed TRO by preventing Defendants from savoring the fruits of their allegedly unethical and fraudulent conduct. Pl.'s Mot. at 9. Although Plaintiff fails to cite any legal authority to support his contention, Defendants completely fail to address this element of the Winter test. Thus, the Court finds that this factor weighs in favor of entering a TRO against Defendants.

### E. BOND

Rule 65(c) provides, in relevant part, that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Neither party has addressed the bond requirement. Nonetheless, given the limited duration of a TRO, the Court requires Plaintiff to post a bond in the amount of $10,000 in order for the TRO to take effect.

### F. SCOPE OF THE RELIEF REQUESTED

Generally, an injunction must be narrowly tailored to remedy only the specific harms shown by the plaintiff, rather than to enjoin all possible breaches of the law. See Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004). Here, Plaintiff seeks an injunction preventing Defendants from selling or transferring *any* shares or equity in Hoozad. See Pl.'s Mot. for TRO at 1. Though Defendants do not address this matter

specifically, the Court notes that the requested relief is overbroad.  Plaintiff's claim is that he has a right to a 50% equity stake in Hoozad.  Yet, he provides no authority or reasoning to support his request to prevent Defendants from selling any equity in Hoozad.  Thus, the Court's injunction will not restrict Imani's ability to dispose of *his* personal ownership interest in Hoozad, provided that such interest is not purported to be greater than a 50% equity interest in the company.

Plaintiff also seeks an order requiring Defendants to immediately disclose their accounts, books and records of Hoozad to Plaintiff.  Again, Defendants do not address this issue.  However, Plaintiff fails to provide any legal authority or evidentiary support for such request.  Thus, the Court declines to order the production of such records at this time.

## IV.   CONCLUSION

The Court finds that Plaintiff has made a sufficient showing under each of the four Winter factors to warrant entry of a TRO.  Accordingly,

IT IS HEREBY ORDERED THAT:

1.   Plaintiffs' Ex Parte Motion for Temporary Restraining Order and Order to Show Cause is GRANTED.  Defendants Behzad Imani and Hoozad, Inc., are temporarily restrained and enjoined from selling, encumbering or otherwise transferring, to any third party, stock or other form of equity interest in Hoozad, Inc., or either of its two subsidiary companies Amberix, Inc. and Transpotic, representing more than a 50% ownership interest in Hoozad, Inc.  Any sale or transfer of equity consistent with this Order may be made solely from equity personally held by Imani, his agents, heirs, successors or assigns.

2.   Within three (3) court days of the date this Order is filed, Plaintiff shall post a bond in the amount of $10,000 as a condition of this Order.[4]

3.   Defendants shall file their memorandum and any supporting documents demonstrating why the TRO should not continue in full force as a preliminary injunction pending trial on the merits.  Said memorandum shall be filed by no later than January 28,

---

[4] The Court notes that neither party has addressed the amount of bond, if any, that Plaintiffs should be required to post in this case.

2011, and shall not exceed twelve (12) pages. Plaintiff shall file his reply, not to exceed seven (7) pages, by no later than February 1, 2011. The hearing on Plaintiff's motion for preliminary injunction is scheduled for February 8, 2011 at 1:00 p.m., in Department 1 of the Oakland Division of the United States District Court for the Northern District of California, 1301 Clay St., Oakland, California 94612. Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court may resolve the motion without a hearing, in which case no appearance on the motion will be required. The parties are advised to check the Court's website to determine whether an appearance on the motion is necessary.

        4.      This Order terminates Docket 4.

IT IS SO ORDERED.

Dated: January 25, 2011

                                                        SAUNDRA BROWN ARMSTRONG  
                                                        United States District Judge