UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HOOMAN DAVOODI,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>BEHZAD IMANI; HOOZAD INC.,<br><br>　　　　Defendants. | Case No: C 11-0260 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Docket 4 |

The instant action arises from a business dispute between Plaintiff Hooman Davoodi ("Plaintiff" or "Davoodi") and Defendants Behzad Imani ("Imani") and Hoozad, Inc. ("Hoozad"). The Court has original jurisdiction over Plaintiff's federal claims, 28 U.S.C. § 1331, and supplemental jurisdiction over his state law causes of action, 28 U.S.C. § 1367(a). The parties are presently before the Court on Plaintiff's motion for preliminary injunction. Dkt. 4. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I. **BACKGROUND**

　A. **FACTUAL SUMMARY**

In the Spring of 2009, Imani approached Plaintiff, a long-time acquaintance, regarding the formation of a "green technology" company which they planned to name Hoozad, Inc. Davoodi Decl. ¶ 4, Dkt. 7. The name "Hoozad" is based on a combination of

their first names, (i.e. Hooman and Behzad).  Id.  The purpose of Hoozad was to manage and initially fund two for-profit subsidiaries, Amberix and Transpotic.  Id. ¶ 4.  Their agreement was that Imani would create Hoozad as the parent entity, and that Plaintiff would enter as a 50% equity shareholder, holding Series A Preferred Stock in exchange for a $500,000 investment.  Id. ¶ 5.  In addition, Plaintiff was to receive a seat on Hoozad's board of directors, and share in the responsibility for the direction of Hoozad, Amberix and Transpotic.  Id.  Imani prepared a term sheet which set forth the principal terms of their agreement.  Id. ¶ 6 & Ex. 1.

In July 2009, Hoozad's outside counsel, the law firm of Nixon Peabody LLP ("Nixon Peabody"), drafted the necessary documents to facilitate Plaintiff's investment.  Id. ¶ 7.  In August 2009, Plaintiff was presented with a Stock Purchase Agreement, which, per the term sheet, specified that Plaintiff was to invest $500,000, to be paid in three installments within six months.  Id. ¶¶ 7-8.  In exchange for his investment, Plaintiff would receive Series A Preferred Stock representing a 50% ownership in Hoozad.  Id.  Subsequently, at Plaintiff's request, Imani agreed to extend the payment schedule such that Plaintiff could tender his four installments over the course of eleven months instead of six.  Id. ¶ 8.  In accordance with this agreed-upon modification, Nixon Peabody revised the payment schedule and circulated a revised Series A Preferred Stock Purchase Agreement ("Revised SPA"), the Investor's Rights Agreement and related stock purchase documents.  Id. ¶ 9 & Ex. 2.

Plaintiff's purchase obligations are set forth in section 1 of the Revised SPA, which provides that "the Purchaser agrees to purchase at the Closing and the Company agrees to sell and issue to the Purchaser at the Closing that number of shares of Series A Preferred Stock … set forth opposite the Purchaser's name on Exhibit A at a purchase price of $0.1111 per share."  Rev. SPA § 1.1(b).[1]  There are four Closing deadlines by which

---

[1] The Revised SPA is attached to the Complaint and as Exhibit A to the Declaration of Swantje Mackuth.  For clarity, the court will cite directly to the Revised Stock Purchase Agreement.

Plaintiff was to tender a specific amount to Hoozad for a corresponding number of preferred stock shares. Id. § 1.2(a)-(d). Under the schedule listed in Exhibit A, Plaintiff's investment in Hoozad was to take place over the course of four "Closings," as follows:

| Tranche | Deadline | Shares | Price |
|---|---|---|---|
| First Closing | August 14, 2009[2] | 450,000 | $50,000 |
| Second Closing | November 12, 2009 | 1,350,000 | $150,000 |
| Third Closing | March 12, 2010 | 1,350,000 | $150,000 |
| Fourth Closing | July 10, 2010 | 1,350,000 | $150,000 |
| **TOTALS** | | **4,500,000** | **$500,000** |

Section 1.2(e) states that "At each Closing, the Company shall deliver to each Purchaser a certificate representing the Stock being purchased thereby against payment of the purchase price therefor…."

Although Plaintiff allegedly began tendering payments to Hoozad as early as May 2009, he failed to pay the full purchase price by the deadline for each Closing. See Davoodi Decl. ¶ 14 & Ex. 4. The parties offer distinctly different explanations as to what transpired. According to Imani, he advised Davoodi that he needed to make the full payment by each Closing. Imani Decl. ¶¶ 6-9. When Plaintiff failed to make the requisite payments, the company allegedly began to struggle financially. Id. Imani also told Davoodi that if he did not "make full payments," he would seek other investors. Id. ¶ 8. Plaintiff tells a different story. Though admitting that he did not comply with the payment schedule set forth in the Revised SPA, Plaintiff asserts that he and Imani had established a "course of dealing" in which he would send checks to Imani on an as-needed basis. Davoodi Supp. Decl. ¶ 7, Dkt. 33. Plaintiff alleges that they followed this practice from "the Spring of 2009 ... through mid-2010." Id.

---

[2] The $50,000 payment for the First Closing was due by August 14, 2009. SPA § 1.2(a). The Second Closing was to occur "90 calendar days following the First Closing"; The Third Closing was to occur "120 calendar days following the Second Closing"; and the Fourth Closing was to occur "120 calendar days following the Third Closing." Id. § 1.2(b)-(d) & Ex. A.

1   As of November 2010, Plaintiff alleges that he had sent Defendants payments
2   totaling $251,706.90.  Davoodi Decl. ¶ 14 & Ex. 4.  After Plaintiff requested the issuance
3   of his shares in exchange for his investment, however, Imani became hostile and refused to
4   accept further payments.  Id. ¶ 16.  In addition, Imani refused to issue any stock to Plaintiff
5   and refused to sign any of the revised stock purchase documents.  Id. ¶ 16.  Then, in early
6   December 2010, Imani threatened to sell Plaintiff's putative equity position in Hoozad to
7   third party investors at the end of January 2010.  Id. ¶ 20.

   **B.   PROCEDURAL HISTORY**

   On January 19, 2011, Plaintiff filed a Verified Complaint in this Court against Imani
and Hoozad, alleging claims for:  (1) breach of oral and implied contract; (2) fraud;
(3) negligent misrepresentation; (4) securities fraud under Rule 10b-5; (5) securities fraud
in violation of 15 U.S.C. § 77q; (6) accounting; (7) specific performance; and
(8) preliminary and permanent injunction.  Dkt. 1.  In his first cause of action for breach of
oral and implied contract, Plaintiff alleges that Defendants breached the Revised SPA by,
inter alia, "failing to deliver stock in Hoozad in an amount proportionate to Davoodi's
investment and by failing to provide representation on the Hoozad Inc. Board of Directors
to Davoodi."  Compl. ¶ 23.  Plaintiff alleges that "[he] has been damaged in the amount in
excess of more than $250,000 as result of Defendants' continuing material breaches."  Id.
¶ 25.  Plaintiff does not allege that he has performed *his* obligations under the Revised SPA
or any facts that excuse him for from such obligations.

   Plaintiff accompanied his Complaint with a motion for temporary restraining order
("TRO") in which he sought to enjoin Defendants:  "(1) from selling or in any way
transferring to third parties shares of Hoozad, Inc., owned by Hooman Davoodi; (2) from
selling or in any way transferring to third parties any rights to purchase stock in Hoozad,
Inc. that Davoodi has by entering into a stock purchase agreement with Imani; and (3) [an
order] that all accounts, books and records of Hoozad, Inc. be immediately disclosed to
plaintiff."  Dkt. 4.  The motion is predicated Plaintiff's likelihood of success on his breach

of contract claim only. Plaintiff provided actual notice of the action and the TRO request to Defendants, who filed an opposition and a supporting declaration from Imani. Dkt. 12.

On January 26, 2011, the Court granted in part and denied in part the application for TRO submitted by Plaintiff. The Court denied Plaintiff's request for an order directing Defendants to turn over their books and records based on Plaintiff's failure to present any argument in support of such request in his motion papers. In addition, the Court denied Plaintiff's request to enjoin the sale of *all* Hoozad stock on the grounds that such relief was overbroad. Since Imani owned 50% percent of Hoozad, the Court concluded that it would be improper to enjoin Imani from selling shares that he personally owned. The Order stated, in pertinent part:

> 1.   Plaintiffs' Ex Parte Motion for Temporary Restraining Order and Order to Show Cause is GRANTED. Defendants Behzad Imani and Hoozad, Inc., are temporarily restrained and enjoined from selling, encumbering or otherwise transferring, to any third party, stock or other form of equity interest in Hoozad, Inc., or either of its two subsidiary companies Amberix, Inc. and Transpotic, representing more than a 50% ownership interest in Hoozad, Inc. Any sale or transfer of equity consistent with this Order may be made solely from equity personally held by Imani, his agents, heirs, successors or assigns.
>
> 2.   Within three (3) court days of the date this Order is filed, Plaintiff shall post a bond in the amount of $10,000 as a condition of this Order.

1/26/11 Order at 9, Dkt. 21. The Court set an expedited briefing schedule on Plaintiff's motion for preliminary injunction and scheduled a hearing for February 8, 2011. Id. Plaintiff posted a $10,000 bond on January 28, 2011. Dkt. 22.

Defendants timely filed their opposition to the motion for preliminary injunction on January 28, 2011. Dkt. 23. In their memorandum, Defendants state that they are willing to stipulate to withholding the sale of 2,160,000 shares of stock, which correlates to the amount of money that Plaintiff has paid to Hoozad thus far. Defs.' Opp'n at 2. Likewise, Defendants have agreed to allow Plaintiff to inspect Hoozad's books and records, in accordance with § 2.2 of the Investors Rights Agreement. Id. Based on these stipulations, Defendants contend that the only issue remaining with respect to the instant motion is

**1** whether they should be enjoined from selling the remaining shares of stock *for which*
**2** *Plaintiff has not yet paid*.  Id.  Plaintiff's motion is now fully briefed and is ripe for
**3** adjudication.[3]

**4** **II.    LEGAL STANDARD**

**5**     To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood
**6** of success on the merits; (2) a likelihood of irreparable harm to the moving party in the
**7** absence of preliminary relief; (3) that the balance of equities tips in the favor of the moving
**8** party; and (4) that an injunction is in the public interest.  Winter v. Natural Res. Def.
**9** Council, Inc., ---U.S. ---, 129 S.Ct. 365, 376 (2008).  These factors may be evaluated on a
**10** sliding scale, such that a preliminary injunction may be issued when plaintiff demonstrates
**11** "serious questions going to the merits and a hardship balance that tips sharply toward the
**12** plaintiff … assuming the other two elements of the Winter test are also met."  Alliance for
**13** the Wild Rockies v. Cottrell, --- F.3d ---, 2011 WL 208360, at *4 (9th Cir. Jan. 25, 2011).
**14** "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be
**15** granted unless the movant, *by a clear showing*, carries the burden of persuasion."  Mazurek
**16** v. Armstrong, 520 U.S. 968, 972 (1997).

**17** **III.    DISCUSSION**

**18**     **A.    SUCCESS ON THE MERITS**

**19**     The Revised SPA specifies that California law is to apply to acts and transactions
**20** relating to the rights and obligations arising under the agreement.  SPA § 6.5.  To state a
**21** claim for breach of contract under California law, Plaintiff must plead and prove the
**22** following elements: "(1) existence of the contract; (2) *plaintiff's performance or excuse for*
**23** *nonperformance*; (3) defendant's breach; and (4) damages to plaintiff as a result of the
**24** breach."  CDF Firefighters v. Maldonado, 158 Cal.App.4th 1226, 1239 (2008) (emphasis

---

**27**     [3] In violation of the Court's scheduling order, Plaintiff filed an oversized reply brief on February 1, 2011.  The Court struck Plaintiff's reply, but granted Plaintiff leave to file a
**28** conforming brief the following day.

added).[4]  Generally, a plaintiff who has not performed under a contract is foreclosed from suing another for breach of that agreement.  See Durell v. Sharp Healthcare, 183 Cal.App.4th 1350, 1367 (2010) ("[I]t is elementary that one party to a contract cannot compel another to perform while he himself is in default.") (internal quotation marks and citations omitted).  See also 1 Witkin, Summary of Cal. Law, Contracts, § 848, at 935 (10th ed. 2005) ("The plaintiff must be free from substantial default in order to avail himself or herself of the remedies for the defendant's breach.").

As noted, Plaintiff alleges that Defendants breached the Revised SPA by "failing to deliver stock in Hoozad Inc. in an amount proportionate to Davoodi's investment and by failing to provide representation on the Hoozad Inc. Board of Directors to [him]."  Compl. ¶ 23.  Defendants do not dispute that Hoozad has accepted payments from Plaintiff or that it has yet to issue any stock to him.  Nevertheless, Defendants take the position that Plaintiff's timely and complete payments under the timetable set forth in the Revised SPA constitutes "a condition precedent to any shares being transferred to him."  Defs.' Opp'n at 8.  As support for this proposition, Defendants point to section 5 of the Revised SPA, which provides, in relevant part:

> 5.  **Conditions of the Company's Obligations at Closing.**  *The obligations of the Company to the Purchaser under this Agreement are subject to the fulfillment, on or before the Closing, of each of the following conditions*, unless otherwise waived:
>
> ….
>
> 5.2  **Performance.**  All covenants, agreements and conditions contained in this Agreement to be performed by the Purchaser *on or prior to the Closing* shall have been performed or complied with in all material aspects.

Rev. SPA §§ 5, 5.2 (emphasis added).

---

[4] The elements for a breach of contract claim are the same regardless of whether the allegedly breached contract is written or oral.  Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal.App.3d 1371, 1388 (1990).  Likewise, "[a] cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct."  Yari v. Producers Guild of Am., Inc., 161 Cal.App.4th 172, 182 (2008).

Defendants posit that because Plaintiff admittedly failed to pay Hoozad the full amount due at each Closing or the total investment of $500,000 by July 12, 2010, Hoozad is "under no obligation to convey any stock to [Plaintiff]." Defs.' Opp'n at 8. They contend that, at Hoozad's election, the company may refund the monies paid by Plaintiff or issue stock commensurate with Plaintiff's actual investment. Id. at 9. In his reply, Plaintiff does not respond substantively to Defendants' arguments or address sections 1.2 or 5 of the Revised SPA. Nor does Plaintiff dispute that he breached the terms of the Revised SPA. Pl.'s Reply at 3-4. Instead, Plaintiff argues his breaches are "excused" because Defendants allegedly have admitted to breaching the Revised SPA by failing to issue stock to him. Id. According to Plaintiff, Defendants continued to accept his payments, even though they were not in accordance with the terms of the Revised SPA—and so doing, Defendants allegedly "waived their rights to demand perfect performance from [him]." Id.

As an initial matter, Plaintiff should have made his waiver argument in his opening brief, not his reply. Plaintiff's performance or excuse for non-performance is an essential element of a breach of contract claim. See Careau & Co., 222 Cal.App.3d at 1390 (holding that a breach of contract cause of action was properly dismissed where plaintiffs failed to allege facts establishing their performance). As such, it was incumbent upon Plaintiff to demonstrate in his moving papers that he was excused from "perfect performance" by virtue of Defendants' acceptance of his payments. By waiting to raise the issue until his reply, Plaintiff has deprived Defendants of the opportunity to respond to these newly-asserted arguments. See Ind. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("we review only issues which are argued specifically and distinctly in a party's opening brief") (internal quotation marks, alterations and citations omitted).[5]

---

[5] In addition, the Court notes that in his reply, Plaintiff argues that "Imani may have breached fiduciary duties by improperly issuing Series B Preferred shares" and that Defendants breached their obligations under section 2.1 and 2.2 of the Investor's Rights Agreement. Pl.'s Reply at 5. Since these arguments were not presented in Plaintiff's moving papers, they will not be considered by the Court.

Notwithstanding the above, the merit of Plaintiff's waiver argument appears to be questionable. Section 6.12 of the Revised SPA states:

> 6.12 **Delays or Omissions.** No delay or omission to exercise any right, power or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this Agreement, shall impair any such right, power or remedy of such *non-breaching or non-defaulting party nor shall it be construed to be a waiver of any such breach or default*, or acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring…..

Rev. SPA § 6.12 (emphasis added). Thus, even if Defendants accepted Plaintiff's deficient payments, such conduct does not, pursuant to this provision, necessarily constitute a waiver of Plaintiff's admitted failure to perform.

Plaintiff counters that Defendants cannot invoke section 6.12 on the theory that neither of them is a "non-breaching or non-defaulting party." Pl.'s Reply at 4. More specifically, Plaintiff maintains that by acknowledging that no stock has been issued to him, Hoozad has "admit[ted] to being in default at all times." Pl.'s Reply at 4. This reasoning puts the cart before the horse. Under Section 5 of the Revised SPA—which Plaintiff fails to discuss— Hoozad's obligations to Plaintiff are triggered upon Plaintiff's satisfaction of *his* obligations under the Revised SPA. By his own admission, Plaintiff failed to pay the amount due at each Closing and ultimately failed to follow through on his $500,000 commitment to Hoozad. Since Plaintiff did not meet his contractual funding obligations, Defendants may have a valid defense that Hoozad was absolved of any obligation to issue stock. C.f., Co-Investor, AG v. Fonjax, Inc., No. C 08-1812 SBA, 2009 WL 2390227, at *5 (N.D. Cal. Aug. 3, 2009) (finding that claim for breach of a SPA was not likely to succeed where plaintiff failed to comply with its obligations under that agreement); Sackett v. Spindler, 248 Cal.App.2d 220, 227-230 (1967) (holding that seller's contractual obligation regarding the sale of stock in his company was discharged where the purchaser was in material breach by failing to pay the full amount due under their agreement). Consequently, the Court is not persuaded by Plaintiff's assertion that section 6.12 has no

application here.  In sum, the Court finds that Plaintiff has failed to carry his burden of demonstrating a likelihood of success on the merits.[6]

### B.  IRREPARABLE HARM

The party seeking a preliminary injunction is required to "establish that he is likely to suffer irreparable harm in the absence of preliminary relief."  Winter, 129 S.Ct. at 374. Plaintiff claims that he will suffer irreparable harm if his stock shares are sold.  Pl.'s Mot. at 8-9; Pl.'s Reply at 5.  However, since Defendants have stipulated to withhold the sale of 2,160,000 shares of stock (which corresponds to his actual investment), Plaintiff's claim of irreparable harm is largely moot.  With regard to Plaintiff's contention that Defendants should not be allowed to sell the stock for which he has *not* paid, the Court notes that such claim appears nowhere in Plaintiff's cause of action for breach of contract—which alleges only that Defendants failed to issue stock "in an amount proportionate to Davoodi's investment…."  Compl. ¶ 23.  Plaintiff also fails to cite to any provision of the Revised SPA or present any compelling argument establishing that he has "a contractual right to buy more Hoozad stock…."  Pl.'s Mot. at 8.

Moreover, Plaintiff has failed to demonstrate why money damages would not be sufficient to compensate him in the event he ultimately prevails in this action.  See Lydo Enter., Inc. v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984) ("[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); Cal. Pharmacists Ass'n, 563 F.3d at 851 ("monetary harm does not constitute irreparable

---

[6] The Court observes that Section 1.2 requires that "[a]t each Closing," Hoozad is "to issue "certificates representing the Stock being purchased thereby against payment of the purchase price therefore…."  Rev. SPA § 1.2(e).  The parties, however, do not discuss this provision, and the Court declines to do so sua sponte at this juncture.  See Indep. Towers of Wash., 350 F.3d at 929 ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court…. [W]e have held firm against considering arguments that are not briefed.").  In addition, the Court notes this Order does *not* conclusively determine the merits of Plaintiff's contract claim or this action.  Nor does it finally resolve the issue of whether Defendants' acceptance of Plaintiff's partial payments constitutes a waiver of Plaintiff's purported breach.  The resolution of that as well as other salient issues in this case will likely require the presentation of a more complete record and briefing.

harm."). Plaintiff's ancillary contention that he will be irreparably harmed by losing the opportunity to play a "long-term management role" in Hoozad is not compelling. Pl.'s Mot. at 8-9. Plaintiff's right to a Board seat is contingent upon his satisfaction of his investment obligations under the Revised SPA, which Plaintiff concedes that he failed to meet. Thus, based on the record presented at this stage of the litigation, the Court finds that Plaintiff has not sufficiently demonstrated that he will suffer irreparable harm from Defendants' sale of stock for which Plaintiff never paid.

## IV.   CONCLUSION

Plaintiff has not demonstrated a likelihood of success of the merits on his breach of contract claim or that he will suffer immediate and irreparable harm absent a preliminary injunction. The Court therefore need not reach the questions of the balance of hardships or the public interest. Nonetheless, given Defendants' acquiescence to a preliminary injunction with respect to the sale of 2,160,000 shares of stock and the inspection of the company's books and records, the Court enters the limited injunction as set forth below. Accordingly,

IT IS HEREBY ORDERED THAT:

1.   Plaintiff's motion for preliminary injunction is GRANTED IN PART and DENIED IN PART. Plaintiff's request to enjoin the sale or transfer of all Hoozad stock is DENIED. The motion is GRANTED with respect to the sale or transfer of shares corresponding to the amount that Plaintiff has paid to Hoozad, and as to Plaintiff's request to inspect Hoozad's books and records.

2.   The injunction imposed by the Court on January 26, 2011, shall be superseded with the following Order:

   a.   Pending further Order of the Court, Defendants Behzad Imani and Hoozad, Inc., are restrained and enjoined from selling, encumbering or otherwise transferring, to any third party, 2,160,000 shares of Series A Preferred Stock in Hoozad.

      b.      Defendants Behzad Imani and Hoozad, Inc., shall forthwith make available all books and record in accordance with the rights accorded to Plaintiff under the Investor's Rights Agreement § 2.2.

      c.      The $10,000 bond previously posted by Plaintiff shall remain in effect as a condition of this Order.

2.      The parties shall appear for a telephonic Case Management Conference on <u>May 26, 2011 at 3:00 p.m.</u>  The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference.  The statement shall comply with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

3.      This matter is REFERRED to the Magistrate Judge Bernard Zimmerman for a mandatory settlement conference which shall take place prior to the Case Management Conference.

IT IS SO ORDERED.

Dated:  February 9, 2011

                                                              SAUNDRA BROWN ARMSTRONG
                                                            United States District Judge